305 P.2d 370

Paul BENCOE, Plaintiff-Appellant,

v.

Denis BENCOE, Defendant-Appellee.

No. 6114.

Supreme Court of New Mexico.

Dec. 26, 1956.

Jason W. Kellahin, Santa Fe, for appellant.

Iden & Johnson, James T. Paulantis, Albuquerque, for appellee.

LUJAN, Justice.

On October 15, 1954, plaintiff-appellant filed his complaint seeking to recover judgment against the defendant-appellee by reason of defendant's alleged failure to comply with certain agreements entered into between the plaintiff and defendant relative to a limited partnership. The complaint alleged four causes of action. By his first cause of action the plaintiff sought recovery of judgment in the amount of $4,000 and costs of suit for the alleged failure of defendant to comply with the terms of an agreement concerning the sharing of income between the parties and settling an alleged indebtedness in the amount of $4,000. The second cause of action sought recovery of $4,000 on an alleged account stated between the parties. The third cause of action sought recovery of judgment for $10,549.95; and the fourth cause of action sought recovery of $7,549.95. Both the third and fourth causes of action are based upon claims that defendant failed to comply with the terms of an agreement between the parties whereby plaintiff agreed to sell to defendant one-half of his interest in a limited partnership. Under the terms of this agreement a new partnership or corporation was to be formed, but neither was ever formed.

On November 22, 1954, defendant filed his answer generally denying the allegations of the complaint and further alleged: "Defendant denies that on or about the 28th day of August 1954, defendant totally repudiated said contract, and states that said contract was never acted upon by either the plaintiff or defendant and that said contract is void and unenforceable; and admits that no new partnership or corporation was formed in accordance with the agreement set forth as plaintiff's Exhibit 'A', but denies that plaintiff was without fault as alleged in the complaint."

Paragraph 2 of the agreement entered into by the parties on April 10, 1947, provides as follows:

"Paul agrees to sell, assign and transfer to Denis, one-half of his interest and share of Bencoe, Meader Co. (exclusive of salary compensation) for the sum of $10,549.95, which amount was determined by applying to the net worth of Bencoe, Meader Co. at the opening of business on November, 1946, one-half of Paul's profit sharing ratio under the aforesaid amended Articles of Limited Partnership, which net worth was ascertained from the

books in conformity with the established accounting practices, and accepted and approved by the parties hereto. *Said purchase price is to be paid simultaneously with the execution of the limited partnership agreement making Denis a general partner of Bencoe Meader Co., or the organization of the Corporation as aforesaid."*

Paragraph 5, provides:

"Pending the consummation of the new limited partnership agreement, or of the corporation in accordance with Article 1 hereof, Paul shall pay to Denis as and when ascertained or determined from the books of Bencoe, Meader Co., according to standard accounting practice, one-half of all profits, bonuses or benefits (exclusive of weekly salary or drawing) accruing to Paul on and after November 1, 1946, on account of his interest as general partner in the present Bencoe, Meader Co. (exclusive of his weekly salary or drawing) and Denis shall reimburse Paul to the extent of one-half of any diminution or loss that Paul may suffer or sustain of his interest or share of the present firm of Bencoe, Meader Co. on and after November 1, 1946, *as and when such diminution or loss is ascertained or determined from the books of said firm according to standard accounting practice,* the purpose and intention of the said parties being that as between them, they will equalize all gains or losses that accrue to or are sustained by Paul on and after November 1, 1946, arising from the present partnership business of Bencoe, Meader Co." (Emphasis supplied.)

When the plaintiff rested his case the defendant moved the court to dismiss plaintiff's complaint for the reason that he had not shown substantial evidence upon which the court could base a decision under any one of the four causes of actions set forth in said complaint.

"The Court: Well, to the court, the answer to the third and fourth causes of action is relatively simple. In the first place, under paragraph 2 this money was not due to be paid, specifically: 'Said purchase price is to be paid simultaneously with the execution of the limited partnership agreement making Denis a general partner of Bencoe, Meader Co., or the organization of the Corporation as aforesaid.' And the plaintiff admitted it wasn't done, so unless and until that is taken care of, there can be no cause of action in that regard. As to the diminution of the loss, as counsel for defendant stated, the burden is not on the defendant to prove these things. The burden is on the plaintiff, and paragraph 5 specifically say, 'as and when such diminution or loss is ascertained or determined from the books of said

firm according to standard accounting practice,' and there isn't one iota of testimony with reference to standard accounting practices or diminution of loss. Counsel must agree it just isn't there. So the motion will be granted as to the third and fourth cause of action.

"Now, as to the first and second causes of action, it is, to me it is a little more complicated than either counsel would like to have it. I think the court can answer as to the account stated, the second cause of action, and that is that the motion will have to be sustained because the account stated is based upon the original contract which the court has just ruled upon, and there was nothing due at that time, nothing due under that contract until the partnership was formed. The court has a great deal of sympathy for the plaintiff in this thing. It is a peculiar thing— not minimizing your situation, Mr. Bencoe, but it is a peculiar thing, but the motion will be sustained as to count 2. That brings us to count one. The court is not going to rule on it at this time. The ruling will be deferred until the defendant puts on a case, and the court will rule on it at the close of all the testimony."

"Mr. Paulantis: The defendant stands on its motion, Your Honor, and will not put on any evidence in the face of our position.

"The Court: I understand. Any final argument gentlemen—as I understand it, the defendant rests?

"Mr. Paulantis: Yes, sir, defendant rests.

"The Court: Any final argument, gentlemen?

"Mr. French: I can add nothing, Your Honor; I have no further argument."

Thereafter the court made and entered a judgment dismissing plaintiff's complaint and he appeals.

The plaintiff contends that the court erred in dismissing his complaint for the following reasons: Because "(1) A valid contract was entered into between plaintiff and defendant April 10, 1947, creating a partnership between them, or making an assignment of one-half of plaintiff's partnership interest to defendant; there was part performance thereof by plaintiff which was accepted by defendant, and a waiver of full performance, rendering said contract enforceable by plaintiff, at least in part, and entitling him to an action on the contract, and an accounting; (2) an accounting was had between plaintiff and defendant under the terms of the contract of April 10, 1947, in which defendant acknowledged a valid indebtedness to plaintiff supported by consideration, and an account was stated between the parties; (3) a valid contract was entered into between

plaintiff and defendant August 1, 1951, supported by consideration, which contract was repudiated by defendant, entitling plaintiff to an immediate action on the contract, and (4) the findings of fact made by the lower court are erroneous and are not supported by the evidence adduced at the hearing, and therefor cannot sustain the judgment."

It is elementary that where the agreement contemplated the formation of a partnership at some future time or upon the happening of some future contingency, as in this case, it is evident no partnership is intended until the event or contingency occurs. Therefore, persons who have entered into an agreement to become partners at some future time or upon the happening of some contingency, do not become partners until the agreed time has arrived, or the contingency has happened.

After careful reading and consideration of the agreement here in question, it is apparent, the execution of a limited partnership agreement making the defendant a general partner or the organization of said company into a corporation was essential prerequisite to a binding contract between the parties. This view is supported by the fact that Exhibit "A" attached to the complaint shows that "that said purchase price is to be paid simultaneously with the execution of the limited partnership agreement making Denis a general partner

of Bencoe, Meader Company or the organization of the corporation as aforesaid." The plaintiff never executed a limited partnership agreement making the defendant a general partner nor was the Bencoe, Meader Company ever organized as a corporation.

The Court made the following findings of fact:

"1. Plaintiff and defendant, on April 10, 1947, entered into the agreement set forth in the complaint as plaintiff's Exhibit 'A', and that through no fault of the defendant the plaintiff never executed a limited partnership agreement making the defendant, Denis Bencoe, a general partner, nor was the Bencoe, Meader Co. ever organized as a corporation.

"2. At no time did the plaintiff and defendant ever operate under the contract set forth in plaintiff's complaint as Exhibit 'A', or the contract set forth in plaintiff's First Cause of Action.

"3. Defendant Denis Bencoe's only connection with Bencoe, Meader Co., was as an employee under an employment contract entered into between plaintiff, as general partner of Bencoe, Meader Co., and defendant, as employee.

"4. One of the reasons plaintiff, Paul Bencoe, entered into the contract

set forth in his first cause of action was to circumvent the laws of the State of New York regarding partnerships, and was informed by his own legal counsel at that time that such a contract was in contravention of the laws of New York and was a subterfuge.

"5. There was no accounting by standard accounting practice, or otherwise, showing that the plaintiff, Paul Bencoe, suffered or sustained any diminution or loss as to his interest in Bencoe, Meader. Co. after November 1, 1946.

"6. At no time was there a sharing of withdrawals or division of profits, bonuses or benefits by plaintiff and defendant from Bencoe, Meader Co.

"7. Plaintiff stated that there was a total lack of consideration for the execution of the contract set forth in the first cause of action to the complaint."

From the foregoing findings of fact the Court concluded as a matter of law, that:

"1. Because of plaintiff's failure to execute a limited partnership agreement, making defendant a general partner in Bencoe, Meader Co., or to incorporate said business, no consideration was ever due from the defendant to the plaintiff under paragraph 2 of the contract set forth as Exhibit 'A' to the complaint, and plaintiff's fourth cause of action should be dismissed.

"2. There was no accounting showing a diminution or loss to the plaintiff; therefore, nothing is due from the defendant under paragraph 5 of the contract set forth as Exhibit 'A' to the complaint, and therefore, plaintiff's third cause of action should be dismissed.

"3. Since there was nothing due from the defendant to the plaintiff under the contract set forth as Exhibit 'A' to the complaint, there was never an account stated between the plaintiff and defendant, and therefore, plaintiff's second cause of action should be dismissed.

"4. Since the first cause of action is actually based on the false supposition that something was due from the defendant to the plaintiff under the contract set forth as Exhibit 'A' to the complaint, and this being an erroneous supposition on the part of the defendant, and the second, third and fourth causes of action having been resolved in favor of the defendant, the first cause of action must likewise fail and should be dismissed.

"5. Since there was a complete and total failure of consideration in the contract set forth in the first cause of action, and the defendant derived no benefit from the contract, and the contract was never acted upon by either

party, it is therefore void and unenforceable."

In his narrative testimony about the purported sale of his one-half interest in the Bencoe, Meader Company, the plaintiff testified substantially as follows: " * * *. We called in a mutual friend of ours, Leon Caminez, who was an attorney, and told Mr. Caminez, about the agreement, about the various points we had agreed upon, what our arrangements should be, and we had several conferences with Mr. Caminez, and at the same time I corresponded with Mr. Leon Gordon who was one of the limited partners in Meader Company, telling Mr. Gordon about my desire to have my brother join in the partnership, and asking his consent. Mr. Gordon raised various objections and the matter dragged on as between him and me, so my brother and I informed Mr. Caminez of the situation and Mr. Caminez then said that if a suitable agreement were drawn up between my brother and myself, together with an employment agreement, between Bencoe, Meader Company, and my brother, the partnership arrangement we desired could in effect be established and the door would still be open for formalization of the situation if and when Mr. Gordon consented. (So far as the record discloses Mr. Gordon never did consent). We requested Mr. Caminez to go ahead and Mr. Caminez drew up these two agreements he had suggested, and on their execution they became the Employment Agreement of October 1, 1946, I believe, between my brother and Bencoe, Meader Company, and the April 10, 1947 agreement between him and me. Afterwards my brother and I had one or two conversations on the subject of obtaining Mr. Gordon's consent and my brother said that he wasn't too much concerned about the formalization part of the agreement, that as long as he had the substance he was satisfied. * * * I agreed and we sort of reviewed, in a general way more or less, our financial operations over the years, and it was, there was then a little brotherly argument as to where the amount should be fixed. My brother insisted I was too generous when I said $4,000, I insisted it was right. So finally we nailed down the figure of $4,000 and agreed on it, so that is how the agreement of August, 1951, came about."

On cross-examination he testified as follows:

" * * * *

"Q. Now, you at no time ever formed a partnership wherein Denis Bencoe was made a general partner of Bencoe, Meader Company, did you? A. That is correct.

"Q. And did you at any time organize a corporation with the Bencoe, Meader Company? A. I did not.
" * * * *

"Q. Now, you in your narrating and direct testimony here, mentioned

that you had an employment agreement with Mr. Denis Bencoe and the Bencoe, Meader Company? A. Yes, sir, there was an employment agreement dated, entered into between Denis Bencoe and Bencoe, Meader Company, on October 1, 1946.

"Q. And under that employment agreement he was merely an employee of the company, is that right? A. No, it goes further than that. That employment agreement is a very *unusual* one.

"Q. Do you have it with you? A. Yes, sir, we have it here. *It was actually part of the device set up and offered by Mr. Caminez to create a de facto partnership—here* it is sir. (Emphasis ours.)

" * * * *

"Q. Now, that agreement merely hires the defendant to work for the Bencoe, Meader Company, does it not, and specifies the salary at which he shall be employed? A. It does do that, yes, sir.

"Q. And it doesn't have anything about the sharing of the profits and losses between the employee, Denis Bencoe, and the Bencoe, Meader Company? A. This particular agreement does not, no.

" * * * *

"Q. Well, at any time did you ever terminate or rescind this agreement which has been marked Defendant's Exhibit 1? A. The employment agreement was never formally rescinded.

"Q. And until sometime in 1953 Denis Bencoe was an employee of the Bencoe, Meader Company? A. Technically, you might say so, but as a matter of fact, neither he nor I paid any attention to the agreement after it was signed. It was merely, admittedly so, it was a *device* to get the 1947 agreement, *to bring through the back door what we couldn't bring through the front door, to create a de facto partnership* between my brother and me, and the relationship was—no documents were made up.

"Q. And that is true of all these documents, isn't it? A. That is true.

"Q. You drew them up and put them away and forgot about them? A. That is correct. We knew the spirit of them, but we would not say every time something came up that the agreement says so and so, we understood there was an agreement and we would abide by it.

"Q. In other words, you made an agreement, but you didn't operate by it. You operated as brothers? A. We operated as brothers pursuant to the agreement. We did not rub each other's noses into the agreement every day, or acknowledge it, but it was our

understanding, what we agreed to we would abide by, if not in the letter we would do so in the spirit of the agreement."

A careful examination of the record shows that the findings of fact are justified by the evidence, and the legal conclusions based thereon are without error.

It follows from what has been said that the judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and SADLER, McGHEE and KIKER, JJ., concur.